**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| KATHLEEN R. HERROLD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:13-CV-360-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Kathleen R. Herrold

on October 9, 2013, and a Memorandum in Support of Plaintiff's Motion for Summary Judgment

or Remand [DE 19], filed by Plaintiff on May 20, 2014. Plaintiff requests that the decision of the

Administrative Law Judge be reversed and remanded for further proceedings. On August 8, 2014,

the Commissioner filed a response. Plaintiff has not filed a reply and the time to do so has passed.

For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On October 8, 2010, Plaintiff filed an application for disability and disability insurance

benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that she became

disabled on January 28, 2010. Plaintiff's application was denied initially and upon reconsideration.

On May 10, 2012, Administrative Law Judge ("ALJ") Jonathan Stanley held a hearing at which

Plaintiff, with an attorney, and a vocational expert ("VE") testified. On May 17, 2012, the ALJ

issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2012.

2. The claimant has not engaged in substantial gainful activity since January 28, 2010, the alleged onset date. (20 CFR 404.1571 *et seq*.).

3. The claimant had severe impairments: rheumatoid arthritis, degenerative disc disease of the cervical and lumbar spine, and arachnoid cyst (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to lift/carry and push/pull up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours of an 8 hour workday, and sit for about 6 hours of an 8 hour workday. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently balance and never climb ladders, ropes or scaffolds. She can frequently finger bilaterally.

6. The claimant is capable of performing past relevant work as a nursery school attendant, work that does not require the performance of work-related activities precluded by the claimant's RFC (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 28, 2010, the date of alleged onset, through the date of the decision (20 CFR 404.1520(f)).

On July 8, 2013, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

Plaintiff has been diagnosed with the eye conditions of keratoconjunctivitis sicce and epithelial basement membrane dystrophy of the corneas. In 2006, Plaintiff was diagnosed with an arachnoid cyst in her brain. She had one seizure in 2003 and experiences headaches. As noted by her treating neurosurgeon at one such follow-up appointment in 2011, Plaintiff requires periodic MRI follow-up to monitor her arachnoid cyst, which can grow and cause significant mass affect.

On November 8, 2011, an MRI of Plaintiff's spine showed mild spondylitic changes of the cervical spine, and left foraminal stenosis secondary to facet and uncinate degenerative changes.

On April 9, 2012, Dr. Vinay K.P. Reddy, Plaintiff's treating rheumatologist, completed a medical source statement giving Plaintiff a guarded prognosis due to pain in her joints. He reported that Plaintiff had positive straight leg raising tests, reduced grip strength, swelling, muscle spasms, muscle weakness, and abnormal gait, and that her pain was frequently severe enough to interfere with her attention and concentration. He opined that Plaintiff could sit for six hours in an 8-hour work day but could stand less than 2 hours, required at least 10 minutes of walking around every 10-15 minutes during the day, and would need to take breaks from work of about ten minutes every 2-3 hours. Dr. Reddy reported that Plaintiff could occasionally lift less than ten pounds but rarely lift ten pounds, could rarely twist and never stoop, crouch, or climb. He also opined that Plaintiff has significant limitations in repetitive reaching, handling or fingering, limited to 30% of time during a working day in which Plaintiff could grasp, perform fine manipulations, or reach with either arm. Dr. Reddy reported that Plaintiff's impairments were reasonably consistent with her symptoms and functional imitations and that she was unable to tolerate the work stress of even low stress jobs. He also reported that Plaintiff was likely to have good days and bad days, and was likely to be absent

3

from work more than four days per month.

On April 10, 2012, Dr. Mohammed A. Siddiqui, Plaintiff's primary care physician, completed a medical assessment of Plaintiff's ability to do work-related activities. He wrote that Plaintiff has rheumatoid arthritis causing tender and swollen joints, including her hands, wrists, elbows, knees, and ankles, and reduced grip strength, with restrictions on reaching, handling, and pushing/pulling. He also reported that Plaintiff has spondylosis and degenerative joint disease at the cervical and lumbar spine that causes back pain, and that the back pain increases upon physical activity, including prolonged standing or walking. He opined that Plaintiff could lift and/or carry less than five pounds for up to 1/3 of an 8-hour work day, is limited to sitting, standing, or walking less than half an hour at a time and for four hours total in an 8-hour work day, and that she would need more than two reclining rest periods of more than an hour in an 8-hour period. He also reported that the combined effects of Plaintiff's impairments exacerbate the total effect of the limitations.

Plaintiff also has been treated for depression. On November 18, 2010, a clinical psychologist performed a mental status examination of Plaintiff on behalf of the Agency. He reported that Plaintiff "appears to be severely depressed and has had a long history of fighting depression" and that she "has daily crying spells which is related both to her pain as well her depression." He opined that Plaintiff is unable to work because of chronic pain and gave her a GAF of 50.

On November 24, 2010, a psychiatrist reviewed Plaintiff's file for the agency and opined that Plaintiff had major depressive disorder and experienced mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.

4

On August 6, 2012, treating psychiatrist Dr. R. Bhawani Prasad completed an assessment of Plaintiff's ability to do work-related activities based on her mental health limitations. He reported that she had been diagnosed with major depressive disorder and anxiety. Dr. Prasad opined that Plaintiff has poor or no ability to follow work rules, relate to co-workers, deal with the public, use judgment, deal with work stresses, function independently, maintain attention/concentration, and only a fair ability to understand, remember and carry out detailed but not complex job instructions. He also opined that Plaintiff would be unable to relate predictably in social situations, and has only a fair ability to behave in an emotionally stable manner.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning

5

of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ

"uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v.*

*Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618

(7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*,

381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may

reverse the decision "without regard to the volume of evidence in support of the factual findings."

*White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th

Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the

reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the

important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55

F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must

"'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing

court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful

review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see*

*also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of

evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski*

*v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into

the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a

"disability" as defined by the Social Security Act and regulations. The Act defines "disability" as

an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed because (1) he improperly weighed the opinions of the Agency's mental health consultants and so failed to find that Plaintiff's mental health impairments were severe at Step 2, and (2) he made an erroneous credibility determination when he failed to properly consider Plaintiff's subjective complaints of pain. The Commissioner argues that the ALJ's opinion does not contain reversible error.

### A. Treating Physicians

The ALJ did not give weight to any of Plaintiff's treating doctors. The ALJ addressed three medical source statements completed by treating doctors: Plaintiff's psychiatrist, her rheumatologist, and her primary care physician. All three of these treating doctors gave opinions as to Plaintiff's ability to work.

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. §

404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt v. Barnhart*, 395 F.3d at 744. In particular, an ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(I)-(ii), (c)(3)-(6). "[W]henever an ALJ does reject a treating

source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ stated that he gave little weight to the medical source statement completed by Plaintiff's psychiatrist because it had been some months since she had seen Plaintiff, because her report was not entirely consistent with the opinion of the state consultative examiner, and because of Plaintiff's daily activities. The Court address the question of daily activities in more detail below, but notes here that the ALJ did not explain how the non-examining consultative examiner's report is substantial conflicting evidence, particularly when the ALJ chose only to give that opinion "some" weight.

The ALJ dismissed the two medical source statements addressing Plaintiff's physical abilities as inconsistent with the record because Plaintiff had some negative straight leg tests, normal gait, and had strength in her lower extremities. The ALJ does not explain how any of these individual findings are inconsistent with the treating physicians' conclusions regarding Plaintiff's pain, her need to rest, or other postural limitations that resulted from reduced range of motion in her spine. He did identify the specialization of Plaintiff's rheumatologist and the length of the treating relationship, but did not explain how a few isolated tests – tests which don't appear to be directly correlated with Plaintiff's main complaints – make both opinions inconsistent with the record, and did not address the fact that the medical source opinions were consistent with each other. The ALJ repeatedly referred to Plaintiff's daily activities as a reason to give little weight to the treating sources' opinions, but does not draw a logical bridge between the Plaintiff's ability to dress, sometimes with assistance, remember her medication, perform light housework, and do necessary light shopping, despite the fact

that it sometimes makes her feel too emotional, with his finding that the medical source statements are not to be credited.

Not only is the ALJ's use of Plaintiff's daily activities to disregard the medical source statements from all of her treating doctors problematic, but the Court is also concerned by how significantly he relied on her daily activities to discount Plaintiff's reports of pain and other limitations. The Seventh Circuit Court of Appeals has repeatedly emphasized:

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as []he would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Punzio*, 630 F.3d at 712 (explaining that a plaintiff's ability to complete activities of daily living does not mean that she can manage the requirements of the workplace). Furthermore, the Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores, as these alone are not sound bases for a credibility determination. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff's] numerous qualifications regarding [his] daily activities" and methods of coping with pain); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim of disabling pain). Although the ALJ did not explicitly equate Plaintiff's daily activities with work, he did use them both to find Plaintiff less than credible and to disregard the opinions of all of her treating doctors.

In particular, he referred to Plaintiff's daily activities to disregard her reports of pain, but without addressing either how her reports of pain intensity are inconsistent with her reports of pain or with the medical evidence that she does suffer from a myriad of physical ailments. *See* 20 C.F.R. § 404.1529(c)(3); SSR 96-7p, 1996 WL 374186, at *6 (July 2, 1996) (providing that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence.").

## B.     Mental Health

In addition to his problematic disregard of the psychiatrist's statements regarding Plaintiff's work-related limitations, the ALJ's consideration of Plaintiff's mental health impairments has other errors. Plaintiff agues that the ALJ erred in failing to find that Plaintiff's depression and anxiety were severe impairments and in failing to incorporate non-exertional limitations in the RFC. The Commissioner argues that the ALJ did not commit reversible error by finding that Plaintiff's mental impairments were not severe since a claimant satisfies step two by showing that she has at least one impairment or combination of impairments that is severe.

Step two of the ALJ's analysis requires an examination of whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c).

As described above, the ALJ gave little weight to the medical source statement filled out by Plaintiff's treating psychiatrist. The ALJ also considered the Agency's consultative examination, using it as a reason to find the treating psychiatrist's opinion inconsistent, but gave it only "some" weight because "there is very little regular treatment and most of [Plaintiff's] difficulties seem to

12

stem from her physical impairments." AR 27. After giving no more than minimal weight to any of the medical opinions in the record addressing Plaintiff's mental health, the Court is left without any way of determining what evidence forms the basis of the ALJ's opinion regarding Plaintiff's mental health. Instead, he appears to have substituted his own medical opinion for that of the treating and consulting mental health professionals in the record, despite repeated warnings by the Seventh Circuit Court of Appeals that ALJs are not to "play doctor." *See Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009); *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)

The ALJ did not ask Plaintiff about her reasons for not pursuing more than what he characterized as "little regular treatment," apparently ignoring the fact that the primary care physician – who saw Plaintiff much more frequently – also addressed Plaintiff's depression, and without identifying any treatment prescribed to Plaintiff that she did not pursue. This failure runs counter to the directive that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide" and "may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p, at *7; *see also Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan]

13

unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

The ALJ also appears to have engaged in the practice that the Seventh Circuit Court of Appeals has described as problematic "cherry-picking" of medical evidence when he emphasized treatment notes indicating that Plaintiff's depression was "periodic" and that she once reported that "she was doing okay." Selecting only a few positive treatment notes "demonstrate[s] a fundamental . . . misunderstanding of mental illness" because "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio*, 630 F.3d at 710. "[S]ymptoms that 'wax and wane' are not inconsistent with a diagnosis of recurrent, major depression. 'A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.'" *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008); *see also Punzio*, 630 F.3d at 710 ("Even if we accept the [single] treatment note as evidence that [the plaintiff] enjoys a few 'good days,' that evidence still offers no support for the ALJ's finding that her mental illness does not prevent her from holding a job.").

In this case, the ALJ used what he perceived as lack of treatment and a few cherry-picked references in the medical notes to disregard the opinions of every mental health source in the record and find that Plaintiff had only minor limitations in mental functional capacity.

In addition, even if the ALJ did not err in his conclusion that the mental health impairments were not severe on their own, he was still required to take her depression, anxiety, as well as her other non-severe impairments, into account when crafting his RFC. "Although these impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring

14

them altogether.  Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing  20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).  There is no indication that the ALJ considered the combined effects of Plaintiff's impairments.

The myriad errors in the ALJ's opinion require remand and a new ALJ opinion.  The ALJ is directed to perform a new credibility assessment that fully addresses the medical and mental health evidence in the record and Plaintiff's reports of pain and daily activities in accordance with the controlling regulations.  The new opinion should also address a of the medical and mental health evidence in the record with a thorough explanation of the weight given to each medical source opinion and a logical bridge from the evidence to the ALJ's conclusions, including contacting medical sources for new information as necessary.  The ALJ is reminded of the need to fully comply with all applicable directives in crafting his determination of Plaintiff's work-related limitations.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Brief Plaintiffs Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security (sic) [DE 19] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 17th day of March, 2015.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record